Rachel L. Fiset (Cal. Bar No. 240828)
Ashley Amell (Cal. Bar No. 347334)
**ZWEIBACK, FISET & ZALDUENDO LLP**
315 W. 9th Street, Suite 1200
Los Angeles, CA 90014
Telephone: (213) 266-5170
Email: rachel.fiset@zfzlaw.com
Email: ashley.amell@zfzlaw.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

NICHOLAS DIFATTA, an individual; FAITH DIFATTA, an individual; L.D., a minor; H.D., a minor; TRACY WAGNER, an individual; FRANKY GIRON, an individual; E.G., a minor; J.B., a minor; ERIC EICHMAN, an individual; THERESA EICHMAN, an individual; TREVOR EICHMAN, an individual; KYLIE EICHMAN, an individual; TIFFANIE RICHARDSON, an individual; LIAM WATERS, an individual; T.R., a minor; H.W., a minor; RYAN COMPTON, an individual; CAROLYN COMPTON, an individual; GAVIN COMPTON, an individual; G.C., a minor; ERICA RYAN, an individual; ERIC RYAN, an individual; N.R., a minor; R.R., a minor; B.R., a minor; ANDREA TANPOCO, an individual; CHARLES TANPOCO, an individual; O.W., a minor; K.T., a minor; SAUL IBARRA, an individual; DANIELLE M. IBARRA, an individual; L.I., a minor; VERONICA DASNER, an individual; DUSTIN DASNER, an individual; I.D., a minor; C.D., a minor; PETER MCALPINE, an individual; MADELINE KERSHNER, an individual; CORY GALBRAITH, an individual; MIKAYLA GALBRAITH, an individual; C.G., a minor; RACHEL DOLAN, an individual; GUSTALVIA HEATH, an individual; DELMY HEATH, an individual; ANTHONY RESSLER, an

Case No.:

**COMPLAINT FOR DAMAGES**

1. Negligence
2. Negligence Per Se
3. Strict Liability for Ultrahazardous Activities
4. Continuing Private Nuisance
5. Permanent Private Nuisance
6. Continuing Public Nuisance
7. Permanent Public Nuisance
8. Trespass

**DEMAND FOR JURY TRIAL**

individual; N.R., a minor; JOSHUA HOWARD, an individual

Plaintiffs,

v.

CHIQUITA CANYON, LLC, a Delaware Limited Liability Company; WASTE CONNECTIONS OF CALIFORNIA, a California Corporation; CHIQUITA CANYON, INC., a Delaware Corporation; WASTE CONNECTIONS US, INC., a Delaware Corporation; and DOES 1 through 150, Inclusive

Defendants.

Plaintiffs NICHOLAS DIFATTA, an individual; FAITH DIFATTA, an individual; L.D., a minor; H.D., a minor; TRACY WAGNER, an individual; FRANKY GIRON, an individual; E.G., a minor; J.B., a minor; ERIC EICHMAN, an individual; THERESA EICHMAN, an individual; TREVOR EICHMAN, an individual; KYLIE EICHMAN, an individual; TIFFANIE RICHARDSON, an individual; LIAM WATERS, an individual; T.R., a minor; H.W., a minor; RYAN COMPTON, an individual; CAROLYN COMPTON, an individual; GAVIN COMPTON, an individual; G.C., a minor; ERICA RYAN, an individual; ERIC RYAN, an individual; N.R., a minor; R.R., a minor; B.R., a minor; ANDREA TANPOCO, an individual; CHARLES TANPOCO, an individual; O.W., a minor; K.T., a minor; SAUL IBARRA, an individual; DANIELLE M. IBARRA, an individual; L.I., a minor; VERONICA DASNER, an individual; DUSTIN DASNER, an individual; I.D., a minor; C.D., a minor; PETER MCALPINE, an individual; MADELINE KERSHNER, an individual; CORY GALBRAITH, an individual; MIKAYLA GALBRAITH, an individual; C.G., a minor; RACHEL DOLAN, an individual; GUSTALVIA HEATH, an individual; DELMY HEATH, an individual; ANTHONY RESSLER, an individual; N.R., a minor; JOSHUA HOWARD, an individual, (collectively, "Plaintiffs") by and through their attorneys of record, Zweiback, Fiset & Zalduendo LLP, for their demand for jury trial against Defendants, CHIQUITA CANYON, LLC, a Delaware Limited Liability Company; WASTE CONNECTIONS OF CALIFORNIA, a California Corporation; CHIQUITA CANYON, INC., a Delaware Corporation; WASTE CONNECTIONS US, INC., a Delaware Corporation; and DOES 1 - 150 (collectively, "Defendants") hereby allege as follows:

**NATURE OF THE CASE**

1. This case arises out of Defendants negligent and reckless operation of Chiquita Canyon Landfill (the "Landfill") that resulted in catastrophic and life-altering

consequences for Plaintiffs. Specifically, Defendants, through their personnel, employees, and agents, failed to adequately maintain and operate the Landfill.

2. While operation of any landfill might be a smelly business, the issues with the Landfill go far beyond. The Landfill has been mismanaged for years, with major structural issues being ignored, leading to what amounts to the poisoning of the surrounding communities. Specifically, the Landfill is currently undergoing a subsurface reaction within the land, leading to rising temperatures, heightened production of landfill gas, and increased leachate generation. This situation is causing vast emissions of landfill gas to escape from the Landfill's surface. The reaction area is situated about 1,000 feet from the nearest resident in the surrounding community.

3. As a result of Defendants' negligence and recklessness which ultimately caused the emission of these noxious gases, residents surrounding the Landfill suffer from health issues consisting of, among other things, nausea, trouble breathing, bloody noses, burning eyes, severe cough, dizziness, insomnia, emotional distress, fatigue, and lightheadedness. Furthermore, residents and the public surrounding the Landfill are plagued by a noxious odor omitting from the Landfill negatively impacting, among other things, their quality of life, their home values, their business earning capacity, and their expenses relating to attempts to mitigate the impact of the sickening fumes.

4. Defendants' negligence robbed Plaintiffs of their ability to live normal lives. Instead, they hide inside of their homes in Southern California, fear sending their children to school, fear walking their dogs, and are embarrassed to invite guests over to their homes. Not only have Plaintiffs been deprived of their ability to use and enjoy their homes in ways they expected and deserved, but they also now require medical care, psychological care, and superfluous incidental expenses in their struggle to attempt to regain any normalcy that they can.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 1441 because: (1) there is complete diversity of citizenship between Plaintiffs and

Defendants and (2) the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Venue is proper in the Western Division of the Central District of California pursuant to 28 U.S.C. § 1446(a) because Los Angeles County is where the subject incident and injuries occurred, where the Plaintiffs reside, where the Landfill is located, and where the obligation and liability arose for Defendants.

## PARTIES

7. PLAINTIFFS are individuals who, at all times relevant to this action, resided in the areas impacted by the formation and release of hazardous chemicals and noxious fumes near the Landfill. Plaintiffs have suffered damages, losses, and harm as a result of exposure to the noxious gases including, but not limited to, physical injury, fear of future physical injury, increased risk of future injury, including the need to medical monitoring, emotional distress, harm to real and personal property, medical expenses, relocation expenses, and other economic damages.

8. Defendant Chiquita Canyon, LLC is a Delaware Limited Liability Company. Chiquita Canyon, LLC and its subsidiaries and predecessors constructed, operated, or maintained the Landfill.

9. Defendant Waste Connections of California is a California Corporation. Waste Connections of California and its subsidiaries and predecessors constructed, operated, or maintained the Landfill.

10. Defendant Chiquita Canyon, Inc. is a Delaware Company. Chiquita Canyon, Inc. and its subsidiaries and predecessors constructed, operated, or maintained the Landfill.

11. Defendant Waste Connections US, Inc. is a Delaware Company. Waste Connections US, Inc. and its subsidiaries and predecessors constructed, operated, or maintained the Landfill.

12. Plaintiffs are ignorant of the names and capacities of Does 1 through 150 and sues them as Does 1 through 150 inclusive. Plaintiffs will amend this action to allege these Doe Defendants' names and capacities when ascertained.

13. Each of the named and identified Defendants herein is responsible in some manner for the occurrences, injuries, and damages herein, and the damages were directly and proximately caused by these Defendants acts and omissions. Each Defendant herein was the agent of each of the remaining Defendants, and in doing the things alleged herein were acting within the course and scope of their agency. Defendants are jointly and severally liable to the Plaintiffs for the injuries and damages sustained as a proximate result of their acts and omissions.

## ALLEGATIONS

### Community Background

14. The land the Landfill presently sits on has been occupied by diverse communities long before it was trashed by the waste of Los Angeles County. At the time of the Landfill's inception, in 1965, it was placed right next to the long-standing community of Val Verde.

15. Over the years, the communities surrounding the Landfill continued to expand. The neighborhood communities proximate to the Landfill include, but are not limited to, Val Verde, Hasley Canyon, Williams Ranch, Hasley Hills, Live Oak, North Bluffs, Hillcrest, Stevenson Ranch, Castaic, and Santa Clarita.

16. Val Verde remains a diverse community of working-class people. Val Verde currently has a population of approximately 3,177.

17. Hasley Canyon was and is a horse-back riding community with miles of trails and ranch properties. According to the 2020 U.S. Census, Hasley Canyon has a population of 1,450.

18. The Hasley Hills community was developed from 1988 to 2003 with approval from Los Angeles County, and became home to many families. The Hasley

Hills development included Hasley Canyon Park, adjacent to Live Oak Elementary School.

19. Hillcrest was developed to the north of Hasley Canyon beginning in the early 1990s. The community includes single family homes, and some condos. Hillcrest has approximately 8,560 residents.

20. Williams Ranch is currently being built off of Hasley Canyon Road with a plan to build about 497 new homes. In addition, Los Angeles County has approved a development even closer to the Landfill, Sterling Ranch Estates.

21. The Landfill is currently only approximately 500 feet from Val Verde residences, and a mere 150 feet from a United State Post Office.

22. To the north is the Hasley Equestrian Center and a business park only feet from the Landfill. Live Oak Elementary School and Hasley Canyon Park are also very close in proximity to the Landfill.

**Chiquita Canyon Landfill Background**

23. The Landfill was first approved for a land reclamation project by the Los Angeles County Planning Commission on or around December 21, 1965.

24. On or around March 2, 1977, the Commission approved Conditional Use Permit 1010 for continued operation and maintenance of a waste disposal facility and land reclamation project with appurtenant facilities.

25. On or around November 24, 1982, the Commission approved Conditional Use Permit 1809 for expansion of the existing landfill with Class II and Class III disposal sites.

26. The Board of Supervisors approved Conditional Use Permit 89-081 on or around May 20, 1997, for continued operation of a Class III landfill, after an appeal of the Commission's approval of Conditional Use Permit 89-081.

27. Conditional Use Permit 89-081 was scheduled to expire on or around November 24, 2019, or when the Landfill reached a waste disposal limit of 23,000,000 tons, whichever occurred first.

28. In or around 1997, Defendants signed an agreement with the Val Verde Civic Association by which they agreed to close the Landfill no later than 2019.

29. On or around July 25, 2017, the County of Los Angeles approved another conditional use permit allowing the Defendants to expand and operate for another 30 years. The expansion included increasing the waste footprint from 257 acres to 400 acres, increasing the maximum elevation from 1,430 to 1,573 feet and increasing the daily disposal limits from 6,000 tons per day to 12,000 tons per day.

30. To apply for the conditional use permit, the Landfill was required to create a cancer map, which map showed that there were places within close proximity to the Landfill with populations with increased risk of developing cancer, including but not limited to, Castaic Elementary School and Live Oak Elementary.

31. Notably, the 2017 Conditional Use Permit requires that the Landfill operate in compliance with conditions and all applicable laws, statutes and ordinances. Failure to comply with any conditions or applicable laws, statutes and ordinances was clearly stated to violate the Conditional Use Permit.

32. Multiple sections of the current Conditional Use Permit make it clear that Defendants are not in compliance with the Conditional Use Permit if the Landfill allows odors to become a nuisance in adjacent residential and business areas.

33. On information and belief, Defendants were, and are still currently, experiencing a subsurface reaction in an inactive portion of the Landfill that is causing increased temperatures, increased production of Landfill gas, and increased production of leachate, as well as fugitive emissions of Landfill gas from the surface of the Landfill. The area of the Landfill affected by the reaction is located approximately 1,000 feet from the nearest resident in the surrounding community.

**South Coast Air Quality Management District Has Been Issuing Nuisance Notices of Violation for Over a Year**

34. The South Coast Air Quality Management District ("SCAQMD") is a government entity which enforces air pollution regulations. These regulations are

primarily designed to ensure that the surrounding or ambient air meets Federal and State air quality standards.

35. SCAQMD is responsible for taking reports of nuisance, confirming these reports, and issuing Notices of Violation where these nuisances are confirmed and there is a violation of the law.

36. Under SCAQMD Rule 402 – *Nuisance*, "A person shall not discharge from any source whatsoever such quantities of air contaminants or other material which cause injury, detriment, nuisance, or annoyance to any considerable number of persons or to the public, or which endanger the comfort, repose, health or safety of any such persons or the public, or which cause, or have a natural tendency to cause, injury or damage to business or property."

37. Pursuant to SCAQMD's policies and practices to establish a violation of Rule 402, the agency must receive three calls to their hotline, 1-800-CUT-SMOG, within an hour to dispatch an investigator. If an investigator is able to confirm the complaint with the members of the public who complained and the source of the complaint and at least six complaints can be verified in a 24-hour period, then a Notice of Violation ("NOV") is issued.

38. On or around May 17, 2023, SCAQMD issued the first NOV against Defendants for public nuisance in violation of the agency's Rule 402 and California Health & Safety Code Section 41700.

39. In or around May 2023, SCAQMD began receiving hundreds of odor complaints that Agency investigators traced back to the Landfill.

40. Between approximately May and September 2023, SCAQMD issued 58 NOVs against Defendants for violating SCAQMD Rule 402 and California Health and Safety Code Section 41700. In light of the NOVs and complaints, SCAQMD's Hearing Board issued an Order for Abatement which outlined practices and procedures in an attempt to resolve the issues.

41. The Order for Abatement was ineffective. Between around September 2023 and present, SCAQMD has received over 7,000 complaints alleging the Landfill as the source of noxious odors.

42. In or around October 2023, SCAQMD learned of the existence of leachate seeping out from the area of the Landfill affected by the subsurface reaction. Leachate is any contaminated liquid that is generated from water percolating through a solid waste disposal site, accumulating contaminants, and moving into subsurface areas. As these wastes are compacted or chemically react, bound water is released as "leachate." SCAQMD inspectors conducted an inspection and confirmed that leachate had seeped out of the Landfill and pooled in a concrete-lined stormwater channel adjacent to the area of the Landfill affected by the reaction. SCAQMD inspectors observed that the leachate gave off a foul odor, which inspectors determined was contributing to and worsening the alleged public nuisance.

43. On or around November 2023, SCAQMD also cited the facility for failure to maintain the leachate collection and storage system in good operating condition, failure to report the breakdown of equipment, failure to submit a landfill excavation plan, and violations of other permit and conditional use conditions. Leachate was observed on numerous occasions bubbling, boiling, or shooting out like a geyser. The pooled and flowing liquid was observed seeping out of the soil and causing additional foul-smelling odors.

44. SCAQMD's Monitoring and Analysis Division compiled and reviewed continuous monitoring data from six monitors in Defendants' Community Air Monitoring network, all located within the affected communities. The monitors collect real-time data for hydrogen sulfide ("H2S") and particulate matter. Based on review of H2S continuous monitoring across all six monitors, SCAQMD determined that approximately 35% of all hourly average readings over the past year exceeded the California Office of Environmental Health Hazard Assessment ("OEHHA") acute standard of 30 parts per billion ("ppb") on a 1-hour average. Some readings, across a

1-hour average, exceeded 300 ppb, ten times the OEHHA standard. The highest single reading exceeded 500 ppb. SCAQMD Monitoring and Analysis staff concluded from this data review that there was clear indication that air emissions from CCL were having significant impact on the community.

45. The Los Angeles County Department of Public Health also received monitoring data of these community monitoring stations around the Landfill, including, eventually, real-time access to this data. Dr. Nichole Quick, the Department's Deputy Director for Health Protection, reviewed the data and concluded that, if assumed accurate, it showed evidence that there were likely health impacts observed in the community due to H2S exposure. Dr. Quick noted that physiological health impacts of H2S at the 1-hour acute standard of 30 ppb would often include headaches, nausea, and respiratory irritation. Dr. Quick observed that because the data from communities around the Landfill indicated significant exceedances of the 30 ppb standard, symptoms could be more prolonged or intense.

46. On or around November 6, 2023, a sample collected reported the benzene level well above the 8-hour acute standard, measured at 69.5 ppb. Benzene is a chemical that occurs naturally in crude oil and gasoline. Increased exposure to benzene in the air elevates the risk of several health issues, including anemia, reduced fertility, and leukemia. SCAQMD learned about the result on or around December 8, 2023 (though the lab report was dated November 9, 2023). SCAQMD Monitoring and Analysis staff discussed this result with the third-party lab that performed the analysis to inquire about potential anomalies in the lab methods. The third-party lab confirmed the validity of the results.

47. On or around January 17, 2024, Defendants were issued an Order for Abatement and the SCAQMD Hearing Board ordered Defendants to take significant actions, including but not limited to, making twice-daily inspections for leachate and its immediate removal in a sealed tank and/or truck, expanding leachate collection and extraction wells, installing continuous air monitors throughout the community where

odors have been reported associated with the Landfill, monitoring for benzene and other volatile organic compounds ("VOCs"), taking monthly samples of leachate in the reaction area, providing all past and current air monitoring data to SCAQMD for review, and displaying real-time air monitoring data.

48. On or around March 21, 2024, Defendants were issued a Modified Stipulated Order for Abatement and the SCAQMD Hearing Board ordered Defendants to take additional significant actions, including but not limited to, retaining a third-party to conduct odor surveillance throughout each day at thirty-two different designated location, expediting the replacement of granular activated carbon media in the Landfill Gas Treatment System, sampling and recording landfill gas and sulfur compounds which are combusted in each flare, collecting integrated landfill surface samples for analysis across the reaction area, and organizing a committee which will investigate the underlying reaction and odor impacts.

49. On or around April 24, 2024, Defendants were again issued another Modified Stipulated Order for Abatement and the SCAQMD Hearing Board ordered Defendants to take additional significant actions, including but not limited to, recording temperature measurements of leachate pipes, retaining a third-party to develop and install a system which provides electronic notifications when H2S and benzene exceed 1-hour OEHHA standards, deploying fans in the working face and surrounding area when trash-based odors are detected, and reducing the working face by 25% the remainder of that day of operations if odors are not reduced.

50. On information and belief, these Modified Orders for Abatement were also ineffective. Since the issuances, SCAQMD has, and continues to, receive thousands of complaints alleging the Landfill as the source of noxious odors.

## The United States Environmental Protection Agency Has Issued a Finding of Violation Against the Landfill

51. On or around November 2, 2023, November 8, 2023, January 9, 2024, and January 18, 2024, the United States Environmental Protection Agency ("EPA") conducted on-site inspections of the Landfill.

52. On or around February 21, 2024, the EPA issued a Unilateral Administrative Order ("UAO") to Defendants. The UAO requires Defendants to comply with the law and properly manage, treat, and dispose of hazardous waste and to take steps to mitigate the odors emanating from the Landfill. Additionally, the UAO requires Defendants to provide a plan which meets the objectives and incorporates on-going enforcement efforts by state and local agencies to ensure a comprehensive response to the challenges posed by the Landfill.

53. On or around June 4, 2024, the EPA issued a Finding of Violation ("FOV") to Defendants under the Clean Air Act. The EPA found that Defendants have, and continue to violate the New Source Performance Standards and National Emission Standards for Hazardous Air Pollutants for municipal solid waste landfills, as well as conditions in their Title V permit. The EPA's findings in their FOV includes, but is not limited to, Defendants failure to adequately maintain several wells within the Landfill, failure to operate the Landfill's gas collection devices in accordance with operational requirements, and failure to correct wellhead temperatures at several wells within the Landfill.

54. Further, the EPA's June 4, 2024 FOV laid out the environmental impacts of Defendants' actions and omissions including, but not limited to, emissions of hydrogen sulfide, volatile hazardous pollutants, and volatile organic compounds. The EPA confirmed that emission of the aforementioned can lead to headaches, nausea, respiratory stress, chest pain, coughing, throat irritation, congestion, reduce lung function, inflame lung tissue, scar lung tissue, cancer, and damage to the nervous system.

**The Los Angeles Regional Water Quality Control Board Has Issued Notices of Violation**

55. On or around November 22, 2023, the Los Angeles Regional Water Quality Control Board ("the Water Board") issued a NOV to Defendants. The Water Board found Defendants in violation of the California Water Code for actions and omissions, including but not limited to, failing to contain a leachate seep.

56. On or around March 20, 2024, the Water Board issued an investigative order to Defendants. The investigative order required, among other things, that the Landfill submit information for an investigation of potential surface water and ground water impacts due to the conditions of the Landfill.

57. On or around March 28, 2024, the Water Board issued another NOV to Defendants. The Water Board found Defendants in violation of the California Water Code for actions and omissions, including but not limited to, failure to develop a storm water pollution prevention plan and failure to implement best practices to prevent storm water pollution.

58. On or around April 9, 2024, the Water Board issued another NOV to Defendants. The Water Board found Defendants in violation of the California Water Code for actions and omissions, including but not limited to, unlawful dumping of leachate into a local waterway and discharging water from a vacuum truck with unknown contents into a local waterway which discharges into the Santa Clara River.

**Department of Toxic Substance Control Has Issued Notices of Violation**

59. On or around January 11, 2024, the California Department of Toxic Substances Control ("DTSC") issued a request for information to Defendants. DTSC requested information including, but not limited to, management of condensate and leachate at the Landfill, generation, storage, transportation, treatment, and disposal of leachate at the Landfill, a site map for leachate collection and gas condensate systems at the Landfill, and lab results for leachate samples at the Landfill.

60. On or around March 29, 2024, DTSC issued NOVs to Defendants. DTSC found Defendants in violation of the California Code of Regulations and the California Health and Safety Code for actions and omissions, including but not limited to, failing to minimize the possibility of releases of hazardous waste or hazardous waste constituents to the air, soil, and/or surface water, wrongfully disposing approximately 10,000 gallons of hazardous waste to a facility on non-hazardous manifest, and wrongfully disposing hazardous waste leachate onto soil through a ruptured hose associated with the Landfill's leachate treatment and storage tank.

**The Landfill Continues to Pollute the Air Thereby Causing Plaintiffs' Injuries**

61. Plaintiffs are individuals and families who live and work within the neighboring communities to the Landfill. Given their proximity to the Landfill, Plaintiffs are sickened and injured as a result of these noxious fumes and odors.

62. Plaintiffs claim damages due to elevated levels of hydrogen sulfide, benzene, and other toxic air pollutants. They assert that these pollutants have resulted in physical injuries, prompting many to seek various medical treatments. Additionally, they are afraid of future health risks, an increased likelihood of additional injuries necessitating ongoing medical monitoring, emotional distress, and harm to both real and personal property. Plaintiffs also seek compensation for medical expenses, relocation costs, and other related economic damages.

63. Plaintiffs' injuries include, but are not limited to, headaches, lightheadedness, dizziness, asthma, other respiratory conditions, rashes, cancers, tumors, and related symptoms, as well as potential harms that have yet to be identified. The Plaintiffs are informed and believe, and therefore allege, that some or all of these health effects may lead to chronic and/or ongoing injuries.

64. Additionally, Defendants have subjected Plaintiffs to environmental conditions that have been proven harmful to mental health.

65. This exposure to dangerous substances and conditions has significantly increased Plaintiffs' risk of developing latent illnesses and diseases, including but not

limited to respiratory, cardiovascular, neurological, and mental health issues. As a result, Plaintiffs require medical monitoring, which the Defendants are responsible for providing and funding.

66. Established monitoring and testing procedures for respiratory, cardiovascular, and neurological disorders, as well as mental health issues related to exposure to hydrogen sulfide and other chemicals, enable early detection and treatment, proving both possible and beneficial.

67. Accordingly, through this Court, Plaintiffs seek relief that will compensate them for the physical, emotional, and financial damages they have suffered as a result of the Defendants' acts and omissions.

68. Plaintiffs are also entitled to compensatory damages for the necessary medical monitoring.

## FIRST CAUSE OF ACTION

**Negligence**

**(*As to all Defendants*)**

69. Plaintiffs re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1-68.

70. At all relevant times, Defendants owned, operated, inspected, controlled, managed, and/or maintained the Landfill.

71. At all relevant times, Defendants had the duty to exercise the utmost care and diligence in the ownership, design, operation, management, supervision, inspection, maintenance, repair, and/or control of the Landfill in compliance with regulations and industry standards, so as not to cause harm to individuals, property, the environment, public resources, public health, and/or the use and enjoyment of property and life by the public.

72. Defendants have negligently, carelessly, recklessly, and/or unlawfully used, owned, operated, managed, supervised, maintained, repaired, and/or controlled the Landfill.

73. Defendants' negligence includes, but is not limited to, the failure to implement reasonable safety and leak prevention practices at the Landfill; the failure to properly inspect, assess, and/or evaluate the integrity of the Landfill in compliance with safety standards and regulations; and the failure to implement adequate and appropriate responses to timely and properly react to and contain the leaks.

74. As a direct and proximate result of the negligence of Defendants, Plaintiffs have suffered injuries and damages including but not limited to the inhalation of noxious and toxic gases, chemicals, and fumes resulting in personal injuries such as headaches, dizziness, difficulty breathing, severe coughing, bloody noses, and other harms known as well as unknown. Upon information and belief, some or all of the health effects may result in permanent impairments and/or disabilities.

75. As a direct and proximate result of the negligence of Defendants, Plaintiffs have had to and continue to employ physicians and/or other health care professionals to examine, treat, and care for their injuries. Plaintiffs have incurred and are continuing to incur medical and incidental expenses for such examination, treatment, rehabilitation, and care, in an amount according to proof at the time of trial.

76. As a direct and proximate result of the negligence of Defendants, Plaintiffs have been put at risk for the development of latent health problems such that they now require medical monitoring for these problems in the future.

77. As a direct and proximate result of the negligence of Defendants, Plaintiffs are also suffering from severe mental and emotional distress, sorrow, and anguish.

78. As a direct and proximate result of the negligence of Defendants, Plaintiffs have incurred, and will continue to incur, a loss of income and/or a loss of earning capacity, in an amount according to proof at the time of trial.

79. As a direct and proximate result of the negligence of Defendants, Plaintiffs have incurred, and will continue to incur, a loss of revenues and profits from the operation of their businesses, in an amount according to proof at the time of trial.

80. As a direct and proximate result of the negligence of Defendants, Plaintiffs have suffered and will continue to suffer the loss of quiet use and enjoyment of their property, as well as public properties located within the area. Plaintiffs have suffered and will continue to suffer the diminution of the value of their property and/or have been or will be required to expend monies to repair and/or restore their property, in and amount according to proof at the time of trial.

## SECOND CAUSE OF ACTION

### Negligence Per Se – Violation of California Health and Safety Code § 41700

**(*As to all Defendants*)**

81. Plaintiffs re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1-68.

82. The negligence per se doctrine is codified in California Evidence Code section 669, subdivision (a), under which negligence is presumed if the plaintiff establishes four elements: (1) the defendant violated a statute, ordinance, or regulation; (2) the violation proximately caused injury to person or property; (3) the injury resulted from an occurrence the nature of which the statute, ordinance, or regulation was designed to prevent; and (4) the person suffering the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted.

83. At all relevant times, California Health and Safety Code section 41700 was in full force and effect. This statute states, in pertinent part: "[e]xcept as otherwise provided in Section 41705, a person shall not discharge from any source whatsoever quantities of air contaminants or other material that cause injury, detriment, nuisance, or annoyance to any considerable number of persons or to the public, or that endanger the comfort, repose, health, or safety of any of those persons or the public, or that cause, or have a natural tendency to cause, injury or damage to business or property." Cal. HSC § 41700.

84. Plaintiffs are among the class of persons which California Health and Safety Code § 41700 intends to protect.

85. At all relevant times the underlying actions and omissions giving rise to this action occurred, Defendants violated California Health and Safety Code § 41700. Defendants inadequately contained gas, leachate, and additional surface emissions at the Landfill which ultimately caused odor and other unlawful emissions from the Landfill in violation of California Health and Safety Code § 41700.

86. As a direct and proximate result of the above-described negligent and unlawful conduct of Defendants, Plaintiffs sustained serious personal injuries which have caused, and continue to cause, Plaintiffs pain and suffering all which contribute to Plaintiffs general and non-economic damages, in an amount according to proof at the time of trial.

87. As a direct and proximate result of the above-described negligent and unlawful conduct of Defendants, Plaintiffs sustained serious injuries which have required, and continue to require, hospitalization, therapy, rehabilitation, and additional medical care and treatment all which contribute to Plaintiffs' special and economic damages, in an amount according to proof at the time of trial.

88. As a direct and proximate result of the above-described negligent and unlawful conduct of Defendants, Plaintiffs have suffered, and will continue to suffer, the loss of the quiet use and enjoyment of their property, as well as public properties in the area, and/or have been or will be required to expend monies to repair and/or restore their property, in an amount according to proof at the time of trial.

## <u>THIRD CAUSE OF ACTION</u>

### Strict Liability for Ultrahazardous Activities

**(*As to all Defendants*)**

89. Plaintiffs re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1-68.

90. At all relevant times the underlying actions and omissions giving rise to this action occurred, Defendants owned and operated the Landfill and had supervision, custody, and control of the Landfill.

91. At all relevant times the underlying actions and omissions giving rise to this action occurred, Defendants were engaged in ultrahazardous activity, including but not limited to, handling landfill gas collection and control systems which include vertical and horizontal gas collection wells, associated piping and trenches, multiple collection headers and blowers for venting landfill gas, a landfill gas treatment system, a condensate and leachate collection system, and two flares which combust landfill gas that contain hazardous chemicals, including but not limited to, hydrogen sulfide, methane, and sulfur-containing wastewater at the Landfill.

92. At all relevant times the underlying actions and omissions giving rise to this action occurred, Defendants had a continuing duty to protect Plaintiffs from the foreseeable consequences of mishandling chemicals, including but not limited to, hydrogen sulfide, methane, and sulfur-containing wastewater which follows handling landfill and solid waste disposal at the Landfill.

93. Plaintiffs have suffered harm as a result of Defendants' conduct as described herein, including but not limited to, personal injuries, medical monitoring, medical expenses, loss of income, loss of earning capacity, loss of use and enjoyment of their homes, and loss and enjoyment of public properties located in the area.

94. The harm to Plaintiffs was, and continues to be, the kind of harm that would be reasonably anticipated as a result of the risks associated with handling a landfill and solid waste disposal which contains hazardous chemicals and hazardous waste.

95. Defendants' operation and use of the Landfill was, and continues to be, a substantial factor in causing the harm suffered by Plaintiffs.

96. Defendants had adequate knowledge of the ultrahazardous activities the Landfill was, and continues to be, engaged in. Defendants had adequate knowledge

that failure to properly maintain, store, and/or inspect the condition of the Landfill would result in a likely catastrophic event foreseeably leading to the injuries suffered by Plaintiffs.

97. Defendants' failure to take protective measures to safeguard the dangers of these ultrahazardous activities was with a willful and knowing disregard of the foreseeable dangerous consequences. Defendants deliberately failed to avoid these harmful consequences, thereby causing the injuries suffered by Plaintiffs.

98. Defendants are liable to Plaintiffs for all damages arising from this ultrahazardous activity, including but not limited to, compensatory damages, punitive damages, and attorney's fees pursuant to California Code of Civil Procedure §§ 3294 and 1021.5.

99. Defendants are liable to Plaintiffs for all damages arising from their violations of California Code of Civil Procedure § 3479 and California Health and Safety Code § 25510(a), including compensatory and injunctive relief, punitive damages, and attorney's fees pursuant to California Code of Civil Procedure §§ 3294 and 1021.5.

100. The wrongful acts, representations, and/or omissions of Defendants, hereinabove ser forth, were made, adopted, approved, authorized, endorsed, and/or ratified by their officers, directors, or managing agents, and were done maliciously, oppressively, fraudulently and/or with a willful and knowing disregard of the probable dangerous consequences for the health and safety of Plaintiffs and their community.

101. The officers, directors, and/or managing agents of Defendants had advanced knowledge of the storing of products containing harmful chemicals. The officers, directors, and/or managing agents of Defendants had advanced knowledge that a failure to properly store, maintain, and/or inspect the Landfill would result in the probability of a catastrophic event, which foreseeably would lead to harm and/or injuries to the health and safety of Plaintiffs and their community, generally.

102. In failing to take protective measures to safeguard against the danger, the officers, directors and/or managing agents of Defendants acted with a willful and/or knowing disregard of the probable dangerous consequences, and/or acted with an awareness of the probable dangerous consequences of their conduct and deliberately failed to avoid those consequences, thereby creating a substantial risk of injury of Plaintiffs and the surrounding community.

103. Plaintiffs are entitled to punitive and exemplary damages, in an amount according to proof at the time of trial, to punish and deter such behavior by Defendants and others in the future.

## FOURTH CAUSE OF ACTION

### Private Nuisance - Continuing

**(*As to all Defendants*)**

104. Plaintiffs re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1-68.

105. At all relevant times, Plaintiffs own and/or occupy property in the near vicinity of the Landfill. At all relevant times, Plaintiffs had, and continue to have, a right to occupy, enjoy, and/or use their property without the interference of Defendants.

106. Defendants owed and continue to owe a duty to Plaintiffs to prevent and/or abate the interference with the public and/or the invasion of the private interests of the Plaintiffs.

107. Defendants' acts or omissions created a condition and permitted a condition to exist that was, and continues to be, harmful to Plaintiffs' health, indecent and/or offensive to Plaintiffs' senses, obstructs Plaintiffs' free use of their properties so as to interfere with their comfortable enjoyment of life or property, and/or unlawfully obstructs Plaintiffs' free passage or use, in the customary manner, of any public parks, squares, streets, and/or highways in the area.

108. Defendants' acts or omissions interfered with Plaintiffs' free use and enjoyment of their land in the form of damages to buildings, significant decrease in the

value of their properties, exposure to various toxic substances on their properties, and/or a lingering foul smell of toxic gases, permeating the air surrounding their property and invading their homes.

109. Defendants' acts or omissions, including but not limited to, constructing, expanding, and failing to repair and/or adequately maintain its facility have negligently created an unreasonable risk of foreseeable harm.

110. As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs have suffered injuries and damages to their property. Defendants' acts or omissions are a substantial factor in causing Plaintiffs' harm.

111. Plaintiffs did not consent to Defendants' acts and omissions which have ultimately led to, among other things, noxious odors, pollutants, dust, debris, and air contaminants to enter and settle upon their properties. To the extent Plaintiffs gave any express or implied permission for the maintenance or handling of the Landfill, such permission extended only to a properly maintained, up-to-date, and safe facility. Defendants exceeded the scope of any such consent by operating a shoddy, dangerous, aging, and faulty containments facility near Plaintiffs' property.

112. An ordinary person of reasonable sensibilities would reasonably be annoyed, anguished, and disturbed by the condition created by Defendants.

113. The seriousness of the harm suffered by Plaintiffs outweighs the social utility of Defendants' conduct.

114. Defendants' substantial and unreasonable interference with Plaintiffs' use and enjoyment of their property constitutes a nuisance for which Defendants are liable to Plaintiffs for all damages arising from such nuisance, including but not limited to, compensatory damages, exemplary damages, punitive damages, and attorney's fees.

## FIFTH CAUSE OF ACTION

**Private Nuisance - Permanent**

**(*As to all Defendants*)**

115. Plaintiffs re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1-68.

116. Defendants by reason of their wrongful acts and/or omissions created a permanent condition that is (a) harmful to Plaintiffs' health; (b) indecent and/or offensive to Plaintiffs' senses; (c) an obstruction to Plaintiffs' free use of their property, so as to interfere with the comfortable enjoyment of life or property; and/or (d) unlawfully obstructs Plaintiffs' free passage or use, in the customary manner, or public parks, squares, streets, and/or highways in the exposed area.

117. This permanent condition has interfered with Plaintiffs' free use and enjoyment of their land, along with numerous other neighbors, in the form of damage to buildings, a significant decrease in the value of the property, exposure to an array of toxic substances on the land, and/or a lingering and foul smell of toxic gases, permeating the air surrounding their property and invading their homes.

118. Plaintiffs did not consent to the conduct of Defendants which is the substantial factor in causing Plaintiffs' harms.

119. An ordinary person would be reasonably annoyed or disturbed by the conduct of Defendants.

120. The seriousness of the harm outweighs any public benefit to Defendants' conduct.

121. As a direct and legal result of the wrongful acts and/or omissions of Defendants, Plaintiffs suffered and continue to suffer damages as herein set above.

## SIXTH CAUSE OF ACTION

**Public Nuisance – Continuing**

**(*As to all Defendants*)**

122. Plaintiffs re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1-68.

123. At all relevant times, Plaintiffs own and/or occupy property in the near vicinity of the Landfill. At all relevant times, Plaintiffs had, and continue to have, a right to occupy, enjoy, and/or use their property without the interference of Defendants.

124. Defendants owed and continue to owe a duty to Plaintiffs to prevent and/or abate the interference with the public and/or the invasion of the private interests of the Plaintiffs.

125. Defendants' acts or omissions created a condition and permitted a condition to exist that was, and continues to be, harmful to Plaintiffs' health, indecent and/or offensive to Plaintiffs' senses, obstructs Plaintiffs' free use of their properties so as to interfere with their comfortable enjoyment of life or property, and/or unlawfully obstructs Plaintiffs' free passage or use, in the customary manner, of any public parks, squares, streets, and/or highways in the area.

126. Defendants' acts or omissions interfered with Plaintiffs' free use and enjoyment of their land in the form of damages to buildings, significant decrease in the value of their properties, exposure to various toxic substances on their properties, and/or a lingering foul smell of toxic gases, permeating the air surrounding their property and invading their homes.

127. Defendants' acts or omissions, including but not limited to, constructing, expanding, and failing to repair and/or adequately maintain its facility have negligently created an unreasonable risk of foreseeable harm.

128. The condition that Defendants created and/or permitted to exist affected a substantial number of people within the general public, including causing Plaintiffs to relocate, suffer from personal injuries, and suffer disturbance in the enjoyment of everyday living.

129. As a direct and proximate cause of Defendants' acts and omissions, a substantial number Plaintiffs, and other residents in the area, have suffered injuries and damages to their property. Defendants' acts or omissions are a substantial factor in causing Plaintiffs' harm.

130. Plaintiffs did not consent to Defendants' acts and omissions which have ultimately led to, among other things, noxious odors, pollutants, dust, debris, and air contaminants to enter and settle upon their properties.

131. An ordinary person of reasonable sensibilities would reasonably be annoyed, anguished, and disturbed by the condition created by Defendants.

132. The seriousness of the harm suffered by Plaintiffs outweighs the social utility of Defendants' conduct.

133. Defendants' substantial and unreasonable interference with Plaintiffs' use and enjoyment of their property constitutes a nuisance for which Defendants are liable to Plaintiffs for all damages arising from such nuisance, including but not limited to, compensatory damages, exemplary damages, punitive damages, and attorneys' fees.

## SEVENTH CAUSE OF ACTION

### Public Nuisance - Permanent

**(*As to all Defendants*)**

134. Plaintiffs re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1-68.

135. At all relevant times, Plaintiffs own and/or occupy property in the near vicinity of the Landfill. At all relevant times, Plaintiffs had, and continue to have, a right to occupy, enjoy, and/or use their property without the interference of Defendants.

136. Defendants by reason of their wrongful acts and/or omissions created a permanent condition that is (a) harmful to Plaintiffs' health; (b) indecent and/or offensive to Plaintiffs' senses; (c) an obstruction to Plaintiffs' free use of their property, so as to interfere with the comfortable enjoyment of life or property; and/or (d) unlawfully obstructs Plaintiffs' free passage or use, in the customary manner, or public parks, squares, streets, and/or highways in the exposed area.

137. This permanent condition has interfered with Plaintiffs' free use and enjoyment of their land, along with numerous other neighbors, in the form of damage to buildings, a significant decrease in the value of the property, exposure to an array of

toxic substances on the land, and/or a lingering and foul smell of toxic gases, permeating the air surrounding their property and invading their homes

138. Plaintiffs did not consent to the conduct of Defendants which is the substantial factor in causing Plaintiffs' harms.

139. An ordinary person would be reasonably annoyed or disturbed by the conduct of Defendants.

140. The seriousness of the harm outweighs any public benefit to Defendants' conduct.

141. As a direct and legal result of the wrongful acts and/or omissions of Defendants, Plaintiffs suffered and continue to suffer damages as herein set above.

## EIGHTH CAUSE OF ACTION

### Trespass

**(*As to all Defendants*)**

142. Plaintiffs re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1-68.

143. At all relevant times, Plaintiffs own and/or occupy property in the near vicinity of the Landfill. At all relevant times, Plaintiffs had, and continue to have, a right to occupy, enjoy, and/or use their property without the interference of Defendants.

144. Defendants constructed, maintained, and/or operated the Landfill which, among other things, omitted, and continues to omit, noxious odors, pollutants, and air contaminants on Plaintiffs' properties.

145. The odors, pollutants, and air contaminants invading Plaintiffs' properties are indecent and offensive to the senses. An ordinary person of reasonable sensibilities would reasonably be annoyed, anguished, and disturbed by the odors, pollutants, and air contaminants being omitted by Defendants.

146. The odors, pollutants, and air contaminants invading Plaintiffs' properties has obstructed the free use of their property so as to interfere with their exclusive possession of their land by, including but not limited to, causing Plaintiffs to remain

inside to attempt to escape the odor, causing Plaintiffs to keep doors and windows closed when otherwise they would not be required to do so, causing Plaintiffs embarrassment and reluctance to invite guests to their homes, ultimately impacting the Plaintiffs' asset values negatively.

147. Defendants owed, and continue to owe, a duty to Plaintiffs to prevent and/or abate these interferences onto Plaintiffs' properties.

148. By creating, expanding, and failing to repair and/or maintain the Landfill facilities adequately, Defendants have negligently created an unreasonable risk of foreseeable harm by causing the invasion of Plaintiffs' properties by noxious odors, pollutants, and air contaminants.

149. As a direct and proximate cause of the acts and omissions of Defendants, Plaintiffs suffered, and continue to suffer, from injuries and damages as alleged herein.

150. Plaintiffs did not consent to Defendants' acts and omissions which have ultimately led to, among other things, noxious odors, pollutants, dust, debris, and air contaminants to enter and settle upon their properties.

151. Defendants' acts and omissions have caused, and continue to cause, noxious odors, pollutants, dust, debris, and air contaminants to intrude and settle upon Plaintiffs' properties. Defendants intentionally, recklessly, and/or negligently created a nuisance which substantially and unreasonably interferes with Plaintiffs' rights to exclusive possession of their properties.

152. Defendants' substantial and unreasonable interference with Plaintiffs' use and enjoyment of their property constitute a trespass for which Defendants are liable to Plaintiffs for all damages arising from such nuisance, including but not limited to, compensatory damages, exemplary damages, punitive damages, and attorneys' fees.

* * *

## PRAYER FOR RELIEF

**WHEREFORE, PLAINTIFFS PRAY RELIEF AS FOLLOWS:**

1. A judgment in favor of Plaintiffs on all claims;

2. General damages according to proof;

3. Special damages according to proof;

4. Punitive and exemplary damages;

5. Attorneys' fees pursuant to Code of Civil Procedure § 1021.05;

6. Legal interest, including pre-judgment and post-judgment interest, on judgment from the filing of the original complaint to the date of judgment;

7. Injunctive relief against Defendants to prevent further harm to Plaintiffs and to include provisions for further ongoing monitoring of Plaintiffs and their properties for potential further remediation by Defendants;

8. Any other and further relief as this Court deems just and proper.

* * *

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all the triable issues within this Complaint.

DATED: October 4, 2024

**ZWEIBACK, FISET & ZALDUENDO LLP**

Rachel L. Fiset

_______________________________

Rachel L. Fiset